IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-00037-CMA-KLM

GRETCHEN HAPTONSTALL,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     This matter is before the Court on Defendant American Family Mutual Insurance Company's ("American Family" or "Defendant") Motion for Summary Judgment, wherein American Family asserts that it is entitled to summary judgment on all of Plaintiff's claims. (Doc. # 74.) For the following reasons, the Court concludes that Plaintiff is not entitled to benefits under the insurance policy as a matter of law and enters summary judgment in favor of Defendant on all claims.

## I.    BACKGROUND

     Plaintiff Gretchen Haptonstall was diagnosed with multiple sclerosis ("MS") in December 2003. Between 2010 and 2014, Plaintiff pursued a Ph.D. in education from Capella University. During her enrollment in the Ph.D. program, on November 21, 2014, Plaintiff was involved in a car accident ("the Accident"). Plaintiff made a claim against the driver who caused the Accident and settled that claim in October 2016 for the at-

fault driver's $100,000 liability insurance limits. (Doc. # 5 at 5.) Plaintiff discontinued her studies, and ultimately withdrew from the Ph.D. program, in Winter 2015. She alleges that her withdrawal from the Ph.D. program was necessitated by the injuries she sustained in the Accident. (*Id.*)

At the time of the Accident, Plaintiff was insured under American Family's auto and umbrella policies, which provided $1.1 million in underinsured motorist ("UIM") coverage. (Doc. # 74-1 at 2, 37.) Plaintiff rejected medical expense coverage under the Auto Policy ("the Policy"). (*Id.* at 21, 51.) Following the Accident, Plaintiff made a claim for UIM benefits under her American Family policies.

Under the Policy, any person seeking coverage must comply with several conditions. The Policy provides that, if the insured fails to comply with those conditions and American Family is prejudiced by that failure, American Family has no duty to provide coverage under the Policy. (*Id.* at 4.) Relevant to the instant Motion for Summary Judgment, the Policy provides that

> [e]ach person claiming any coverage of this policy must also:
>
> a.     cooperate with us and assist us in any matter concerning a claim or suit.
> b.     . . .
> c.     have a medical exam at our expense as often as we may reasonably ask. We will select the doctor.
> d.     authorize us to obtain medical, employment, vehicle and other records and documents we request, as often as we reasonably ask, and permit us to make copies.

(*Id.*) The "Suit Against Us" provision of the Policy provides that "[w]e may not be sued unless all the terms of this policy are complied with."

The Umbrella Policy likewise requires Plaintiff to cooperate with American Family and to assist American Family in any matter relating to a claim or suit. It provides that coverage under the Umbrella Policy is no broader than the underlying Policy. (*Id.* at 42, 44.)

On June 30, 2016, and August 1, 2016, American Family requested authorization from Plaintiff to obtain medical and employment records to investigate her UIM claim. (*Id.* at 52–53.) On August 5, 2016, Plaintiff refused to provide American Family authorizations to obtain medical and employment records, representing that she would provide a settlement demand package that includes all requested information. (*Id.* at 54.)[1]

On November 21, 2016, Plaintiff sent American Family a demand package claiming only $4,954.25 in medical expenses in the two years following the accident, but contending that she sustained a brain injury that prohibited her from completing her Ph.D. program, resulting in $312,000 in lost earning capacity, and $162,178.85 for reimbursement for education expenses. Plaintiff also claimed $63,000 in future medical expenses, $545 in mileage, $26,000 in household services, $19,354 in past wage loss, $90,800 in noneconomic damages, and $150,000 in permanent impairment. (*Id.* at 70–77.)

The medical records included with Plaintiff's demand package contained many redactions, including medical notes, surgical history, active problems and diagnoses,

---

[1] Herein, the Court does not address what employment records Plaintiff produced or failed to produce because such records are not material to the instant Motion.

symptoms, medications, family history, references to Plaintiff's depression and anxiety, hypothyroidism, thyroid cancer, hypertension, and heart disease; and medications and treatment for those conditions. (*Id.* at 107–10, 113–16, 122–23, 128–29, 147–78.) American Family repeatedly requested unredacted medical records related to Plaintiff's medications and endocrinology, cardiac, and behavioral health to investigate the possible interaction of these conditions and medications with Plaintiff's cognitive and neurologic functioning.[2] American Family explained why it sought unredacted records on four occasions.[3] It also repeatedly requested pre-accident medical records,[4] as well as updated medical records, as Plaintiff's demand package included medical records through February 2016 only.[5] In total, American Family requested medical records from Plaintiff on 13 occasions.

Further, American Family requested Plaintiff's complete academic records and authorization to obtain Plaintiff's academic records on 10 occasions.[6] Plaintiff produced

---

[2] American Family requested unredacted medical records on December 15, 2016, February 8, 2017, August 4, 2017, October 13, 2017, May 23, 2018, June 14, 2018, August 16, 2018, August 31, 2018, and October 9, 2018. (*Id.* at 82, 84, 93, 95–96, 99–100, 101, 102, 104–05.)

[3] American Family explained why it sought unredacted records on February 8, 2017, October 13, 2017, August 31, 2018, and October 8, 2018. (*Id.* at 84–85, 95–96, 102, 104–06, 180.)

[4] American Family requested pre-accident medical records on December 6, 2016, October 13, 2017, April 2, 2018, May 2, 2018, May 23, 2018, June 14, 2018, August 16, 2018, and October 9, 2018. (*Id.* at 81, 95–96, 97, 98, 99, 100, 101, 104–05.)

[5] American Family requested updated medical records on March 13, 2017, March 27, 2017, August 4, 2017, May 23, 2018, June 14, 2018, August 16, 2018, and October 9, 2018. (*Id.* at 89, 90, 93, 99, 100, 101, 102, 104–05.)

[6] American Family requested academic records on December 6, 2016, December 15, 2016, February 3, 2017, March 9, 2017, March 27, 2017, August 4, 2017, October 13, 2017, August 16, 2018, August 31, 2018, and October 9, 2018. (*Id.* at 81, 82, 83, 88, 90, 93 95–96, 101, 102, 104–05.)

some academic records,[7] but failed to sign an academic record authorization or produce other academic records specifically requested by American Family, including academic advising records. *See, e.g.*, (Doc. # 74-1 at 102) (specifically requesting "any/all records including those related to applications, counseling, academic advising, disciplinary, and documents related to [Plaintiff's] work done within Dissertation Courseroom").

On February 14, 2017, Plaintiff sent American Family a one-page narrative from a treating provider, Dr. Richard Price, dated February 2, 2017, which stated that Plaintiff

> has been under [Dr. Price's] care for some time for her head injury. She was involed [sic] in a PHD program starting 11/2010 and continued until her accident 11/2014. Due to her head injury she was not able to continue with her studies or research. She withdrew from the program 11/2015. Patient was forced to withdraw from her PHD program secondary to her head injury.

(*Id.* at 86–87.)

On March 13, 2017, American Family requested that Plaintiff provide additional information regarding Dr. Price's February 2, 2017 letter, including what documentation he reviewed to conclude that Plaintiff had to withdraw from her Ph.D. program and whether Plaintiff was likely to complete her Ph.D. program but for the Accident. (*Id.* at 89.) On August 4, 2017, American Family repeated its request for additional information, explaining "[w]e are trying to understand Plaintiff's injuries and how they impacted her inability to complete her PhD program. Dr. Price's letter doesn't explain his reasoning or how he came to his conclusion." (*Id.* at 93–94.) On August 31,

---

[7] Plaintiff provided the following academic records concerning her Ph.D. program: her transcript (Doc. # 87-1 at 116–20); her student loan balance (*id.* at 121–23); her enrollment dates (*id.* at 124-26); tuition rates from 2010 to 2017, approval of her Ph.D. proposal, evaluation of her courses and credits, a description of her program, information on the master promissory note on her student loan (*id.* at 142–43); and her student account summary, showing charges and financial aid disbursements (*id.* at 144).

2018, American Family again repeated its request for more information. (*Id.* at 102.)

Neither Plaintiff nor her counsel reached out to Dr. Price to obtain the additional

information requested by American Family. (*Id.* at 184.)

After issuing a reservation of rights, American Family attempted to move forward

without the information Plaintiff failed to produce by requesting an independent medical

exam ("IME") with a neurologist, Dr. Stanley Ginsburg. (*Id.* at 91–92.) Plaintiff submitted

to the IME at American Family's request. On March 15, 2018, Dr. Ginsburg noted

"reservations in believing that [Plaintiff's] cognitive status" was as claimed and

recommended that Plaintiff undergo neuropsychological testing and a psychological or

psychiatric evaluation to understand her current cognitive capabilities. (*Id.* at 136–37.)

Pursuant to Dr. Ginsburg's recommendation, on April 2, 2018, American Family asked

Plaintiff to undergo a medical exam by a neurologist in order to understand her cognitive

abilities. (*Id.* at 97.) Instead of agreeing to a medical exam by a neurologist, Plaintiff

chose to be examined by Dr. Ellen Price, a doctor of osteopathy, on the grounds that

she had not placed her mental health at issue. (Doc. # 87-1 at 150, 153.) Dr. Price

concluded, like Dr. Ginsburg, that additional neuropsychological testing was required to

assess Plaintiff's cognitive abilities: "I feel that the patient does need to get formal

neuropsychiatric testing to help better evaluate what her deficits are so that she can see

these and work on cognitive retraining specifically." (Doc. # 74-1 at 142.)

On October 15, 2018, Plaintiff initiated the instant lawsuit with her Complaint for

Declaratory Judgment and Damages ("Complaint") (Doc. # 5) in the Denver County

District Court. Defendant removed the case to this Court on January 7, 2019. (Doc. # 1.)

In her Complaint, Plaintiff asserts four claims against Defendant: (1) declaratory judgment for medical payments and underinsured motorist benefits pursuant to Colo. R. Civ. P. 57 and Colo. Rev. Stat. § 13-51-101, *et seq.*; (2) breach of contract; (3) common law bad faith breach of insurance contract; and (4) statutory bad faith claim for unreasonable delay and denial of claim for medical payments and UIM benefits pursuant to Colo. Rev. Stat. § 10-3-1115 and -1116. Plaintiff failed to submit to neuropsychological testing, to authorize release of medical and academic records, or to provide unredacted medical records, until ordered to do so by Magistrate Judge Kristen L. Mix in connection with this case on October 30, 2019. *See* (Doc. # 44).

Defendant filed the instant Motion for Summary Judgment on July 30, 2020. (Doc. # 74.) Plaintiff filed a Response (Doc. # 87), and Defendant filed a Reply (Doc. # 94.)

## II.   <u>LEGAL STANDARDS</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture,

speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   **ANALYSIS**

In the instant Motion, American Family moves for summary judgment on all claims. American Family asserts, in relevant part, that it is entitled to summary judgment

on Plaintiff's claims for UIM benefits because she failed to cooperate with its investigation of her insurance claim, as contractually required under the Policy. American Family further asserts that because Plaintiff's UIM claims fail, Plaintiff's dependent claims for common-law and statutory bad faith breach of insurance contract must also fail. Lastly, American Family moves for summary judgment on Plaintiff's medical expense coverage claim on the basis that she expressly rejected medical expense coverage under the Policy.

Plaintiff responds that summary judgment is not warranted because a reasonable jury could conclude that American Family failed to carry its burden of proving noncooperation. Specifically, Plaintiff argues that (1) American Family did not take reasonable steps to honor her request to maintain some physician-patient privilege; (2) any alleged noncooperation was neither material nor substantial; (3) Plaintiff was entitled to follow *Alcon v. Spicer,* 113 P.3d 735, 742 (Colo. 2005), *as modified* (June 27, 2005), in refusing to sign authorizations for medical and academic records and in withholding and redacting such records requested by American Family; and (4) in the alternative, Plaintiff made a good faith mistake in believing she was entitled to follow *Alcon.*

Herein, the Court determines that Plaintiff failed to cooperate with American Family as a matter of law, that Plaintiff is not entitled to benefits under the Policy due to her noncooperation, and that Defendant is entitled to summary judgment on all claims.

A.    **CLAIMS FOR UIM BENEFITS - BREACH OF CONTRACT AND DECLARATORY JUDGMENT**

1.    Applicable Law

a.    *Breach of Contract*

Under Colorado law, the elements of a breach of contract claim are as follows: (1) the existence of a contract; (2) the plaintiff's performance of its contractual obligations or its justification(s) for non-performance; (3) the defendant's failure to perform; and (4) the plaintiff's damages. *MacKinney v. Allstate Fire & Cas. Ins. Co.*, No. 16-CV-01447-NYW, 2016 WL 7034977, at *4 (D. Colo. Dec. 1, 2016). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).

b.    *Failure to Cooperate*

Under Colorado law, an insured may forfeit the right to recover under an insurance policy if he or she fails to cooperate in violation of a policy provision. *Walker v. State Farm Fire & Cas. Co.*, No. 16-CV-00118-PAB-STV, 2017 WL 1386341, at *3 (D. Colo. Feb. 23, 2017), *report and recommendation adopted,* No. 16-CV-00118-PAB-STV, 2017 WL 1386346 (D. Colo. Mar. 17, 2017) (citing *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015)). An insured who fails to cooperate breaches the contract if his or her failure creates a material and substantial disadvantage to the insurer. *Gattenby v. Am. Nat'l Prop. & Cas. Co.*, No. 19-CV-01983-REB-KMT, 2020 WL 3250129, at *3 (D. Colo. Apr. 16, 2020) (first citing *State Farm Mutual Automobile Insurance Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001);

then citing *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989)); *see also*

*Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001). The insurer bears the

burden to prove failure to cooperate. *Soicher*, 351 P.3d at 564. When the only inference

drawn from the evidence is that the insured failed to cooperate, the court may determine

noncooperation as a matter of law. *Hansen*, 779 P.2d at 1364.

In determining whether an insurer has suffered a material and substantial

disadvantage, a Court looks to:

> [w]hether the insurer has been able to complete a reasonable investigation
> with regard to whether the insured's claim is valid. If the insured's refusal to
> cooperate prevents the insurer from completing such a reasonable
> investigation, prejudice should be found to exist. Specifically, it has been
> held that the insurer can deny coverage, following an insured's refusal to
> provide documents reasonably requested by the insurer, on the basis that
> the insurer has been prejudiced because the insured's refusal prejudices
> the insurer by putting the insurer in the untenable position of either denying
> coverage or paying the claim without the means to investigate its validity.

*Walker*, 2017 WL 1386341, at *4 (quoting 1 Allan D. Windt, *Insurance Claims &*

*Disputes* § 3.2 (6th ed. 2016)).

2.    Analysis

The bulk of Plaintiff's claim for coverage under the Policy related to her alleged

inability to complete her Ph.D. program because of the Accident.[8] In order to investigate

and understand the causal link between the Accident and Plaintiff's withdrawal from her

Ph.D. program, as well as Plaintiff's cognitive abilities, American Family requested

authorizations for medical and academic records; unredacted medical records;

---

[8] Plaintiff claimed only $4,954.25 in medical expenses. By contrast, Plaintiff claimed almost
$475,000 in lost earning capacity and expenses related to her withdrawal from the Ph.D.
program.

additional academic records; additional information from Dr. Richard Price; prior and updated medical records; and that Plaintiff undergo additional neuropsychological testing. As described in more detail below, Plaintiff failed to cooperate with any of the above requests, despite Plaintiff's obligations under the Policy to assist American Family "in any matter concerning a claim or suit," including through medical exams and authorizations to obtain medical, employment, and other records. The Court finds that the medical and academic records Plaintiff failed to provide were relevant to the insurer's investigation and that Plaintiff's refusal to produce those records materially and substantially prejudiced American Family because it prevented a reasonable investigation under the circumstances. *See Walker*, 2017 WL 1386341, at *4 ("When the insured's failure to provide some of the requested records is undisputed, the court may determine their relevance to the insurer's investigation as a matter of law.") (citation omitted).

a.    *Medical Records*

First, the Court finds that the medical records Plaintiff did produce copiously redacted information that is relevant to Plaintiff's cognitive functioning and, therefore, her insurance claim. Dr. Ginsburg noted in his IME report that "all elements of the patient's health should be apparent to the examining clinician" and described the redaction of Plaintiff's medical conditions as "disconcerting" and "incorrect." (Doc. # 74-1 at 130, 135.) On nine occasions, American Family requested unredacted medical records related to Plaintiff's endocrinology, cardiac, and behavioral health. (*Id.* at 82, 84, 93, 95–96, 99–100, 101, 102, 104–05). American Family explained why it sought

unredacted records—i.e., to investigate the possible interaction of these conditions and medications with Plaintiff's cognitive and neurological functioning—on four occasions. (*Id.* at 84–85, 95–96, 102, 104–06, 180.) Despite these requests, Plaintiff persisted in not providing unredacted medical records.

The redactions in Plaintiff's medical records included, *inter alia*, references to Plaintiff's depression, anxiety, hypothyroidism, thyroid cancer, hypertension, heart disease, and medications and treatment for those conditions. (*Id.* at 107–10, 113–16, 122–23, 128–29, 147–78.) It is undisputed that hypothyroidism, hypertension, depression, anxiety, and side effects from medication can all affect a person's cognitive state. (*Id.* at 171, 174.) Neuropsychologist Stephen Kalat made clear that the redactions in Plaintiff's medical records were both relevant to Plaintiff's cognitive functioning and an impediment to his evaluation of the same:[9]

> A significant limitation in conducting this evaluation was the repeated pervasive redactions of Mrs. Haptonstall's surgeries, medical conditions, symptoms, and medications. Neurocognitive functioning may be impacted by pre-existing and concurrent medical and psychological conditions. Redactions of medical records may interfere with the accurate assessment of the patient's neurobehavioral conditions and its etiologies.
>
> * * *
>
> The records in this case were redacted and this interfered with the review of records that included multiple conditions that are risk factors with effects on cognition including hypothyroidism, hypertension, depression, anxiety, and West Nile Virus.

(*Id.* at 147, 174.) Accordingly, the Court finds that the redactions in Plaintiff's medical records were relevant to American Family's investigation of Plaintiff's claim, and

---

[9] Dr. Kalat performed a Rule 35 examination of Plaintiff after Judge Mix ordered the examination over Plaintiff's objection.

Plaintiff's failure to provide unredacted medical records prevented American Family from adequately investigating her claim.

Moreover, it is undisputed that Plaintiff refused to provide any medical-record authorizations, failed to produce updated medical records to evaluate her claimed need for future treatment and alleged permanent impairment, and failed to even ask Dr. Price for the additional information American Family requested regarding his conclusory February 2, 2017 letter. Plaintiff persisted in failing to provide this documentation despite American Family's repeated requests and explanations concerning the need for said documentation. *See, e.g.*, (Doc. # 74-1 at 93–94) (explaining American Family sought additional information concerning Dr. Price's letter because it was "trying to understand Plaintiff's injuries and how they impacted her inability to complete her PhD program. Dr. Price's letter doesn't explain his reasoning or how he came to his conclusion."). Consequently, Plaintiff failed to substantiate Dr. Price's conclusion that the Accident rendered her unable to complete her Ph.D. program. Plaintiff also failed to produce relevant medical records, including a November 2016 brain MRI with new findings consistent with MS plaques, which could have impacted Plaintiff's cognition. (*Id.* at 194.) The Court finds that these failures to cooperate also impeded American Family's ability to investigate Plaintiff's insurance claim.

         b.    *Academic Records*

American Family requested that Plaintiff provide a signed authorization for Plaintiff's academic records. Plaintiff refused. American Family then specifically requested that Plaintiff provide "any/all [academic] records including those related to

applications, counseling, academic advising, disciplinary, and documents related to her work done within Dissertation Courseroom" at Capella University. (Doc. # 74-1 at 102.) Plaintiff provided some academic records, including her transcript, her student loan balance, her enrollment dates, and tuition rates. However, Plaintiff failed to produce academic advising records relevant to her insurance claim. American Family first obtained Plaintiff's academic advising records during the course of this litigation. Those records indicate that

- Plaintiff dropped her courses for the summer of 2011 due to health issues (*id.* at 191);

- Plaintiff was "unsure if she [would] be able to manage the stress that comes with the comps and dissertation phase of her program" (*id.* at 192);

- Plaintiff requested a reduction to one class for the fall of 2011 "due to physical issues" (*id.*); and

- in December 2012, Plaintiff's MS "[had] gotten worse over the past year" and she was "interested in getting additional time on her comps" (*id.* at 193).

These documents are highly relevant to the question of whether Plaintiff would have completed her Ph.D. program but for the Accident, as well as the question of what impact Plaintiff's MS had on her ability to complete her Ph.D. program. Thus, Plaintiff's refusal to produce those records materially and substantially prejudiced American Family because it prevented American Family from completing a reasonable investigation of Plaintiff's claim for insurance benefits.

    *c.*    *Additional Neuropsychological Testing*

On April 2, 2018, American Family asked Plaintiff to undergo a medical exam by a neurologist in order to understand her cognitive abilities because Dr. Ginsburg noted "reservations in believing that [Plaintiff's] cognitive status" was as claimed and recommended that Plaintiff undergo neuropsychological testing and a psychological or psychiatric evaluation to understand her current cognitive capabilities. (Doc. # 74-1 at 97, 136–37.) Plaintiff unilaterally chose to be examined by Dr. Ellen Price, a doctor of osteopathy, instead of a neurologist, on the grounds that "she had not placed her mental health at issue." (Doc. # 87-1 at 150–53.) Dr. Price concurred with Dr. Ginsburg's conclusion that Plaintiff "does need to get formal neuropsychiatric testing to help better evaluate what her deficits are . . . ." (Doc. # 74-1 at 142.)

American Family asserts that Plaintiff failed to cooperate under the Policy by failing to submit to additional neuropsychological testing. Plaintiff argues that American Family waived its request for a neuropsychological exam because American Family's insurance agent Amanda Graas failed to mention or request such an exam in either of the two letters she sent Plaintiff following her IME with Dr. Price, including a reservation of rights letter. The Court notes that Plaintiff's unilateral decision to be examined by a doctor of osteopathy, despite American Family's clear instruction to see a neurologist, is indicative of noncooperation. The Court also notes that Dr. Price's report reinforced the need for further neuropsychological testing in order to evaluate Plaintiff's claim. However, the Court need not decide whether Plaintiff has raised a genuine issue of material fact with respect to whether American Family waived its noncooperation

defense as to additional testing because Plaintiff's foregoing failures to cooperate are sufficient to find that she is not entitled to benefits under the Policy as a matter of law.

d.     Plaintiff's Reliance on Alcon v. Spicer

Plaintiff's Response to the instant Motion relies heavily on her assertion that she was entitled to redact and withhold privileged medical information pursuant to the Colorado Supreme Court's opinion in *Alcon v. Spicer,* 113 P.3d 735, 742 (Colo. 2005), *as modified* (June 27, 2005). She argues, in the alternative, that her failure to cooperate with American Family's investigation was based on a good faith misunderstanding that she was entitled to follow *Alcon.*

In *Alcon*, the Colorado Supreme Court considered, in relevant part, the scope of the implied waiver of the physician-patient privilege created by the patient's filing of a personal injury lawsuit. 113 P.3d at 736. In *Harris v. Allstate Ins. Co.*, Judge Lewis T. Babcock rejected an argument virtually identical to Plaintiff's argument in this case—i.e., that *Alcon* absolved an insured from complying with her obligation to issue blanket medical releases to her insurer pursuant to the terms of the insurance contract:

> Nowhere in *Alcon* is there a statement by the Colorado Supreme Court that excuses [the insured] from complying with her clear contractual obligations. Nor does that opinion contain any language stating that an insured can disregard the clear terms of an insurance contract.

No. 09-CV-01953LTBMJW, 2010 WL 2543560, at *4 (D. Colo. June 22, 2010). This Court agrees with Judge Babcock's analysis of *Alcon* and rejects Plaintiff's contention that *Alcon* affects an insured's duty to cooperate under an insurance contract. Accordingly, the Court concludes that Plaintiff was not entitled to rely on *Alcon* in

redacting or otherwise withholding medical information requested by American Family under the terms of the Policy.

Next, Plaintiff argues that her failure to cooperate was based on a good faith misunderstanding that *Alcon* applies. To support this argument, she cites to the proposition that "what would appear at first blush to be [noncooperation by the insured] may be excused, if it develops that the failure of the [insured] was due to mistake, and that there was no exercise of bad faith on [her] part." *Hansen*, 779 P.2d at 1364 (quoting *Farmers Auto. Inter-Ins. Exch. v. Konugres*, 202 P.2d 959, 963 (Colo. 1949)).

The Court finds this exception to be inapplicable to the instant case because Plaintiff's reliance on *Alcon* was unreasonable. As previously discussed, *Alcon* does not concern an insured's contractual obligations under the clear terms of an insurance contract. As such, *Alcon* cannot reasonably be read to absolve Plaintiff of her duties to cooperate under the Policy. Moreover, even if *Alcon* were mistakenly read to extend to pre-litigation contractual obligations, that mistake would not excuse the depth of Plaintiff's noncooperation in this case. Indeed, the *Alcon* Court made clear that the physician-privilege privilege is waived with respect to records "relating to the cause and extent of the injuries and damages allegedly sustained as a result of the defendant's claimed negligence." 113 P.3d at 737. Under that standard, Plaintiff should have produced, at the very least, unredacted medical records that relate to the injuries she sustained as a result of the Accident and records that relate to the cause and extent of her alleged cognitive deficiencies. Given the discrepancy between *Alcon* and Plaintiff's

failure to cooperate in this case, the Court declines to find that Plaintiff's noncooperation constitutes an excusable, good faith mistake.

For the foregoing reasons, the Court finds that Plaintiff's failures to cooperate related to her medical and academic records created a material and substantial disadvantage to American Family and constitute noncooperation as a matter of law. *Hansen*, 779 P.2d at 1364. Indeed, Plaintiff's failures to cooperate put American Family "in the untenable position of either denying coverage or paying the claim without the means to investigate its validity." *Walker*, 2017 WL 1386341, at *4. Thus, American Family is entitled to summary judgment on Plaintiff's claims for UIM benefits under the Policy—i.e., her breach of contract claim and her claim for declaratory judgment to the extent it concerns her entitlement to UIM benefits.

**B.      BAD FAITH BREACH OF INSURANCE CONTRACT**

1.   Common Law Claim

With respect to Plaintiff's common law bad faith claim, "[w]hen an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1114 (D. Colo. 2012). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759–60, *as modified on denial of reh'g* (Mar. 15, 2012).

An insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275 (Colo. 1985).

Because the Court has concluded that Plaintiff is not entitled to benefits under the Policy, Plaintiff cannot succeed on a common law bad faith claim as a matter of law. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (noting that it is settled law in Colorado that a bad faith claim must fail if coverage was properly denied). Given the circumstances before the Court, American Family acted reasonably by not paying benefits to Plaintiff that were not due under the Policy. *See Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018) (granting summary judgment in favor of defendant on bad faith claim where denial of coverage was proper as a matter of law), *aff'd,* No. 18-1447, 2020 WL 2609831 (10th Cir. May 22, 2020). As such, American Family is entitled to summary judgment on Plaintiff's common law bad faith claim.

2. Statutory Claim

In order to prevail on Colorado's statutory claim for unreasonable delay or denial of benefits, a plaintiff must establish that (1) insurance benefits were owed, and (2) the defendant delayed or denied payment of those benefits without a reasonable basis. *See* Colo. Rev. Stat. §§ 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for **benefits owed** to or on behalf of any first-party claimant.") (emphasis added). Accordingly, a plaintiff must prove entitlement to benefits under the policy in order to prevail on a statutory unreasonable

delay or denial of benefits claim. *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-CV-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015), *aff'd sub nom. Sable Cove Condo. Ass'n v. Owners Ins. Co.*, 668 F. App'x 847 (10th Cir. 2016); *see also Walker*, 2017 WL 1386341, at *8.

Again, because the Court has determined that Plaintiff is not entitled to benefits under the Policy as a matter of law, there is no genuine dispute of material fact as to whether Defendant violated Colo. Rev. Stat. §§ 10-3-1115 and -1116. Defendant is entitled to summary judgment on Plaintiff's statutory bad faith claim as well.

## C.  CLAIM FOR MEDICAL EXPENSE COVERAGE

Finally, the Court determines that Defendant is also entitled to summary judgment on Plaintiff's claim for medical expense coverage. A plaintiff has the burden to prove that an asserted claim comes within coverage of the subject insurance policy. *Rivelli v. Twin City Fire Ins. Co.*, 359 F. App'x 1, 4 (10th Cir. 2009). In this case, Plaintiff did not have medical expense coverage under the Policy at the time of the Accident, as her spouse had expressly rejected that coverage. *See* (Doc. # 74-1 at 21 (Declaration for Policy Number 0448-5214-04, the Policy at issue in this case)); (*id.* at 51 (Colorado Medical Expense Coverage Rejection form ("Rejection Form") signed by Plaintiff's spouse)); (Doc. # 94-1 at 1 (affidavit explaining that the Rejection Form applies to Policy Number 0448-5214-04)). Accordingly, the Court concludes that Defendant is also entitled to summary judgment on Plaintiff's declaratory judgment claim to the extent it concerns her entitlement to medical expense coverage.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendant American Family Mutual Insurance Company's Motion for Summary Judgment (Doc. # 74) is GRANTED;

- summary judgment shall enter in favor of Defendant American Family Mutual Insurance Company and against Plaintiff Gretchen Haptonstall on all claims;

- Defendant's Motion to Strike or Limit Opinions of Dave Waskel (Doc. # 75) is DENIED AS MOOT;

- Plaintiff's Opposed FRE 702 Motion to Exclude the Opinions of John M. Palmeri, Esq. (Doc. # 79) is DENIED AS MOOT; and

- the Clerk of Court is directed to close this case.

DATED:  February 4, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge